Mr. Confucione Thank you. Thank you for hearing the case this morning, your honors. I'd like to start off with the page 15 of the district court decision is really the crux of the matter. The district judge said it was reasonable for Hartford Life to determine that RAI was the employer. That's really the crux of our argument here. We believe this is really a contract case. And if you look at the plain language of the policy at issue, Hartford Life's position that RAI was the employer in terms of determining the amount of benefits violates the contract. First, if you look at the definition of employer under the policy itself, it says RAI and affiliate and therefore is included under the definition of employer. Secondly, if you look at all the W-2s in the record that Hartford got, all of them, pay stubs, everything showed that RAI Scarsdale, Mr. Mayer's actual employer was noted as the employer. RAI itself didn't pay Mr. Mayer anything. That's the second thing. The third thing is if you look at monthly rate of basic earnings under the policy, it specifically says including bonuses and commissions, you know, and Hartford never calculated any of Mr. Mayer's bonuses and commissions under the policy in determining the amount of his monthly benefits. Some of the things that the district court said, the court said it was reasonable for Hartford Life to rely on documentation and information provided by RAI, but that's not what the policy says. If you look at page 16 of the policy, it says Hartford, it says how we determine your amount of benefits. Let me get to that page. Hartford Life is responsible under the policy, that's at the bottom of page 16, for going out and investigating, evaluating, determining your eligibility for benefits, and that's Mr. Mayer. He's considered... There's a line about RAI and affiliates being the employer, but isn't RAI also the policyholder? Well, RAI and affiliates is the policyholder and also the employer. Right. It's the same definition for both. So, our position is that for Hartford... Yeah, go ahead, Judge. I'm sorry. If it says RAI and affiliates, why does that require a conclusion that the affiliate is employer and not RAI? Well, I guess I would say two things. One is... If the affiliate was the only relevant employer, then wouldn't the plan have excluded RAI from that language? Well, no, because I think the way that Hartford set up the plan, it covered RAI, which was like the overall agency, and it covered all the affiliates, and there were 50 of them. So, this one plan covered the employees of both of those entities. And if you look... This is the main problem with the case. Hartford's position reads the policy as if employer and policyholder just said Wrangler Associates Incorporated, period, but it doesn't. It says and affiliates. And beyond that, the W-2s themselves and all the payroll subs, there's not one W-2 that shows that Mr. Mayor was paid one pence by Wrangler Associates Incorporated. There'd be more than policy. Yeah. It says policyholder. It doesn't talk about anything about plural. It doesn't explain the difference between RAI and affiliates. It doesn't say that with respect to employees by affiliates, only the affiliate is the employer or the policyholder. Right. So, there's a problem here, and it seems to me that there are rules of deference that seem to apply here, that Hartford has to act unreasonably or contrary to the agreement. And it doesn't seem to me that it's necessarily acting contrary to it. Well, I think, Your Honor, I would say this. I understand what you're saying about interpreting the language. I would say two things. One is, to the extent there's ambiguity there, I think that that would weigh against the insurance company, Hartford, not against the actual claimant under it. And I think that would be true as a matter of contract decision, but also a risk. Go ahead, Judge. You're just saying on the general principle of insurance? Yeah, the general principle. And the secondary thing is this. You know, if the record showed that RAI Proper, Ringler Associates Incorporated Proper, paid Mr. Mayer money, and then Hartford said, well, you got payments from both of these entities, and we're going to consider RAI Proper to be your employer, that would be one story. But that is not the case. RAI Proper didn't pay Mr. Mayer one cent. Under Hartford's interpretation, well, RAI Proper provided W-2s. But if you look at the W-2s, they all say Ringler Associates Scarsdale. That's consistently identified as Mr. Mayer's employer. And Mr. Mayer is employee of Scarsdale. He didn't receive any money from RAI Proper, nothing, because he doesn't work for them. So my point would be, you know, I think given that, how could Hartford possibly have determined? It's only a proof of loss case. They're trying to say how much did the guy make so we can do a disability benefit. I mean, they basically took what his draw was, processed through a payroll system, and ignored all his bonuses and commissions. And again, if you look at the policy, that's just not consistent one with the language I've identified, but it's not consistent with the piece. This is how his employment arrangement works, is that there is the central office, and then it does a lot of things through affiliates, such as payroll. Right, it's a payroll. You wouldn't say that RAI has nothing to do with his employment, or that it's a separate entity, right? I would. It is a separate entity. You know, I think one of the things that the problem in the case is, and the way the policy is written is, just because RAI acted as the administrator of the plan, doesn't mean it's considered his employer for purposes of calculating benefits. You know, again, the problem is that when the Hartford got all his W-2s, even the ones that got from RAI proper, Miss Ferrari, they all were generated and all said who the employer was, and they all said Scarsdale. I mean, the way Hartford interprets the policy, Mr. Mayor shouldn't get any money, because he didn't really receive any income at all from RAI. If they're saying RAI is the employer, Mr. Mayor didn't make any money from RAI. He wasn't paid anything. Who paid the insurance premiums? Well, there was a dispute about that as well, because Mr. Mayor said, I paid the insurance premiums, and therefore triggered one version of the policy, and Hartford concluded that, no, it wasn't paid. I think Hartford concluded either RAI proper or Scarsdale. I'm not sure which one. Right. So then if RAI proper paid the insurance premiums, then doesn't that undermine the argument that they have nothing to do with his employer? I don't think so, because again, if I just look at the definitions in the actual policy about how you determine his monthly benefit, which is on page 18, the monthly rate of basic earnings, it doesn't have that kind of language. It just says your average monthly rate of pay, including bonuses and commissions from the employer. And in this case, if Mr. Mayor didn't receive any money from RAI proper, and all of his money was paid by Scarsdale, it's just, there's no way to interpret that language to conclude that RAI was his employer. And that's essentially what they did. And our position, Your Honors, is it's not really a violation of contract. Counselor, who was the, can I, let me just ask one question. What was the relationship, the relationship between RAI and RAI Scarsdale? I mean, was it a franchise? What was the deal? And where did the revenue, where did the revenues go that were generated by your client? Well, my client, Scarsdale is owned by my client, I believe, the record shows. Right. And he's the sole employee. So what happened is RAI is almost like an umbrella agency, and there's 50 of these affiliates around the country. RAI is a, from my understanding of the services for the underlying 50 affiliates, but all the money that's earned by the affiliates themselves, they're separate independent entities. So Scarsdale is a two separate company. So these are, these are earnings and bonuses and commissions that he paid himself. He paid to himself as the sole owner of Scarsdale. Of Scarsdale, exactly. Yeah, that's true. Yeah. I have one final question, but we'll hear back from you on the rebuttal, but just before that, you made this argument about Hartford's obligation to provide you documents that were generated during the appeal. As I read the regulation, it says that you're supposed to be provided documents on request. Did you make a request that Hartford denied for access to certain documents? Yeah, I think if you look at the records in that regard, but Mr. Mayor and his attorney later in, during the case below, made a lot of requests from Hartford about getting the actual plan itself, the policy and plans, and his application that went along with it. But the documents that you said that you should have gotten that were on appeal, the communications between the underwriter and the broker, the, did you make a request for those and then Hartford denied access to them? I don't think Hartford outright denied it. I think they just didn't produce it until months later after the appeal was already over. Okay. I appreciate that. All right. We're going to, you reserved two minutes for rebuttal, so we'll hear from you again. Let's hear from Mr. Digos. Mr. Digos. Thank you, Your Honor. Hartford Life's decision in this case, calculating benefits, was a classic and straightforward exercise of discretionary authority. There was a dispute regarding the information and records that were to be used to calculate Mr. Mayor's monthly rate of basic earnings under the plan, and Hartford Life exercised its discretion to determine the appropriate facts about those earnings to use in its calculation. And among other things, Bonus and commissions were part of the picture, right? They were. And Ringler Associates Incorporated advised Hartford and provided records to Hartford about all of Mr. Mayor's earnings as it saw them. And it did not include commissions. It included a single bonus. And Mr. Mayor's evidence in the record doesn't point to Mr. Mayor receiving commissions from anybody. When you look at the record that he relies on, there's a claim that Ringler Associates Scarsdale received commissions from various entities other than Ringler Associates Incorporated. But there's no evidence that those commissions were ever paid to Mr. Mayor. So what Hartford did, what Hartford Life did was rely on the documents and information that Ringler Associates, the parent company, provided to Hartford Life. And as Judge Bracetti found, it was reasonable for Hartford Life to determine that was the employer, the plan administrator, and the policyholder and to rely on the information that it provided. I would point out that another factor here is that RAI consistently reported Mr. Mayor's earnings and documented those with pay stubs and the like. Mr. Mayor's assertions about his earnings changed during the course of the claim. And his claimed earnings increased during the life of the claim. And he amended various tax documents during the life of the claim to show greater earnings than the tax documents he had filed before he filed his. But do you dispute that he actually got his salary from RAI Scarsdale, that that's what's reflected on the W-2s? I don't dispute that the W-2s say that the payor is RAI Scarsdale. The W-2s, though, were issued by Ringler Associates, Incorporated. Go ahead. Go ahead. I'm sorry. I didn't want to interrupt you. We haven't finished. Go ahead. That's okay. Please ask your honor. Well, I'm just trying to figure out about these other commissions that he's claiming and bonuses that beef up the earnings for the total earnings for the two years. And what you're saying, I think, is that Associates got bonuses, but the bonuses were formally paid to him, or there's no record of that. Is that what you're saying? That's correct. There is what he referred to as a general ledger, which supposedly showed payments to Ringler Scarsdale from various insurance companies. And now he's claiming that, in effect, those were monies because he was the sole owner of that. They effectively were payments to him. They just weren't kept that way on the books. Yes, he does say that in his reply brief. In the record during the administration, frankly, it's not clear what he's saying about those commissions because he asserted at one point that there was $900,000 in commissions during the two years in question, but he doesn't claim that his earnings for purposes of the contract were $900,000. So it's not clear from the record exactly what he's saying happened with commissions that Scarsdale received. Did you have his tax returns both before the commission? I mean, he obviously has to conform to these larger figures that he's now claiming were bonuses or commissions. And I'd be curious to know what his tax returns showed before that, before he made those changes. Was it just basically the $100,000 a year or the $250,000 total? Your Honor, I believe that the only tax documents, the only tax returns that are in the record are the amended tax returns. I don't believe that were the returns that were actually filed for 2013 and 2014 in the record. For example, that some of his tax documents did change. So, for example, when he initially filed his claim, he provided a 1099 that showed $125,000 in what was called non-employee compensation. Then that 1099 disappeared, and it seems like some or all of that ended up on an amended W-2. The amended W-2 appeared to show responsibility for premium payments that hadn't been on the pre-claimed W-2s for those years. So, there was no clear position from Mr. Mayer regarding what he claimed his earnings were during the course of the speeding. I do just want to point out that Mr. Confusione made a statement during his argument that if there's an ambiguity in the policy, it should be interpreted against Hartford Life. But because Hartford Life has discretionary authority here, the case law in this circuit is clear that that discretionary authority includes the authority to reasonably interpret an ambiguous term in the plan. So, to the extent... Do you think that it is an ambiguous term? So, why does the plan identify RAI and affiliates as the employer? Your Honor, the record is not clear on that. My understanding and my belief is that it was formulated that way so that people like Mr. Mayer, who are, I would say, a statutory employee of a company other than Ringler Associated, Inc., would be eligible for coverage under the plan. Could it have been drafted clearer to make it clear that RAI was the plan administrator and was reporting wages and paying premiums? It probably could have been. But I do believe that the impetus behind that, the way it was drafted, was that... So, employees... So, then that means that you're saying that what it means is that RAI, Scarsdale, is his employer for eligibility, but then RAI is the employer for plan administration. Can we split it that way? Yeah. Yes. I haven't considered it exactly that way, but I do think that's some way you could split it. I think probably the clearest thing to say is that the policy is a little bit ambiguous about who is who. I just want to say, can we split it that way? I'm asking, is that a proper way to interpret the contract that somebody is the employer for some purposes and somebody else is the employer for other purposes? I mean, why isn't it more straightforward to say that there's one It would be appropriate to split it that way. The way I look at the policy is that the term employer in the policy is looking at the relationship with Hartford Life, not necessarily the relationship between the employer and the employee. It doesn't define employer as a statutory employer for tax purposes, for purposes of reporting W-2s and so forth. It defines the employer as the policy holder. I think that it's entirely possible that you could have an employer under the terms of the policy, but there's a separate employment relationship for purposes of tax reporting. Okay. Can I ask you also just about this question about access to documents that are generated on appeal? If the regulation says that a policy holder or the insurer gets access to documents upon request, why shouldn't that extend to the appeal? I mean, if the insurer is generating new documents on appeal that are going to make a difference in the determination, wouldn't, isn't it only fair and it serves the purpose of the regulation for them to have access to those documents? The regulation that governed this claim doesn't provide for that. What it provides for is two occasions when the plan fiduciary is obligated to disclose documents. One is on request, it has to disclose documents that are relevant to an initial adverse claim determination. The DOL has said that disclosure is to allow the claimant to decide whether to file an administrative appeal. It doesn't say initial determination, right? It says, provide that a claimant shall be provided upon request and free of charge reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits. Right. Then we have the relevance is defined later in the regulation of including anything that's generated in the course of making a determination. So why would that only be limited to the initial determination? There's a couple of reasons for that, Your Honor. One is the Department of Labor in its preamble when it established that provision said that that section was intended to, quote, on which the decision was made and to assess whether a further appeal would be justified. Secondly, the other courts of appeals who have considered this question have held that that section that Your Honor read applies to the initial claim determination. And there are two additional sections in that regulation. It's subsections J3 and I5, which are essentially a mirror image that require disclosure of documents regarding what the reg calls the adverse determination on review. Right. But that's a limited set of documents that's provided at that point, right? No. It's, Your Honor, everything that's relevant to the So both provisions require disclosure of, quote, unquote, relevant documents, which is defined in the reg. And subsection H23 applies to the documents that were relevant to the claim determination. And then I, J3 and I5. But one of the things you get at the end of the decision on review, one of the documents that says that you're supposed to receive is a statement that the claimant is entitled to receive upon request and free of charge reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits, right? So that means, isn't that just a reaffirmation of the idea that that provision applies at all phases of the insurer's review, both the initial one and on appeal and after the appeal? I would disagree with that, Your Honor. That's in the section of the regulation that specifically addresses the content of the letter deciding the appeal. And that's the way the reg has been interpreted since it was enacted in the early 2000s. I would also point out, Your Honor. But that means that the letter deciding the appeal reiterates this principle that the claimant has access to all relevant documents that were generated in the course of making the determination, right? Yes. But after the determination is made, not while the appeal determination is being evaluated. And I would point out, Your Honor, that the regulation was amended for claims filed after April of 2018. And the Department of Labor added a new provision specifically limited to plans providing disability benefits that requires the kind of disclosure that Mr. Mayor is arguing for here. Disclosure of new... Right. So the new provision says to provide documents on review. So the new regulation makes it clear that he'd be entitled to the documents even during the appeals process. Correct. But that regulation doesn't apply to this claim. I guess my question is this. So how do we read that? I mean, you could say that the department was clarifying the way the original regulation should have been understood, but was misinterpreted, or they're providing some different rights. It sounds like you think it's a departure from the earlier regulation. I do, Your Honor, because the subsection H23, which is the one that we're debating here, applies to all claims for all types of benefits, life, disability, and health. The new provision in the regulation applies only to plans providing disability benefits. And it has what I would think a somewhat narrower universe of documents that H23 as already requiring disclosure of documents while the appeal is pending, then the new provision is superfluous because it's a narrower disclosure requirement than H23. So I don't think it's reasonable to interpret H23 as requiring that type of disclosure. I would add one more thing, Your Honor, if I may. Under the Second Circuit's rule in HALO, where strict compliance with the regulations are required, I don't think it's appropriate where Hartford Life governed its conduct based on the manner in which this provision had been interpreted by multiple circuit courts of appeals over the years for a district judge to say or a circuit judge to say, well, we think that's wrong. We interpret it differently. And Hartford Life didn't strictly comply with the provision as we now interpret it. You know, I do think that where there's strict compliance with a complex regulation required, if there is some ambiguity about what a regulation specifically requires, and the claim fiduciary complied with a reasonable interpretation of that, that that should satisfy HALO. Okay. I think we got, I get that point. Thanks very much. You're time, you're over time. So let's hear back from, for counsel for the appellant on rebuttal, Mr. Confusione. Thank you again, Your Honor. I think one important part of the record too, is if you look at the administrative record at 1718, remember Hartford was dealing with RAI and they said, well, it was reasonable for us to treat RAI as the employer. But even Ms. Berori, who's RAI's representative, if you look at the record at that spot, says, I spoke with Tanya Martinez at the Hartford. She asked me for your pay statements. I told her she would need to contact you, meaning Mr. Mayor, directly for any additional information regarding your wages. Her records only show what was paid through the Wrangler ADP payroll service. And again, I think that, I know there's a lot of complex issues underlying the gee, Mr. Mayor was employed by RAI proper. That was his employer. When the record shows that he wasn't paid any money from that entity, it's wrong under the policy and it's also not reasonable under ERISA law. And I think that's really where the main crux comes down. And if you look at the November 9, 2017 appeal decision that the Hartford made, that's in the record at 233, you know, again, that's what they're reiterating. They're saying we're entitled to rely on information provided by RAI proper and not the information you gave us. So there was no evaluation of the corrected W-2s, which the record shows, you know, his accountants had to correct his W-2s because I think they weren't properly classified as 1099 income. They didn't go, Hartford didn't explain to Mr. Mayor, we're rejecting those things because we don't think those are accurate statements of the actual money that you made from Scarsdale. They just said, we're entitled to look at RAI as the employer. And that's what the district court said. And we think that violates the policy language just as a matter of contract interpretation. So your point I take is that if we were to ban the case to look at these other numbers, that the insurance company would still be in a position to challenge whether they were really received by your client or whether they stayed with RA Scarsdale. In other words, part of what this looks like is that with regard to the RA Scarsdale, he wanted to build up the numbers and he took monies that were received by RA and as the claim developed, started treating them as if he had received them personally, independently of Scarsdale, from Scarsdale. And that issue would be litigated, presumably, if we were to ban it, as you would wish, right? Right. I don't think that issue was ever played out and it certainly wasn't the basis for Hartford's determination here. Hartford's determination in the district court decision was based solely on it's okay to treat the quote employer as RAI proper only, not Scarsdale. And on that score, we think that's what was wrong with the decision below. Your adversary mentioned the relationship that one way to look at this, who the employer was, was the relationship with Hartford. And I take it that RA Scarsdale had no relationship with Hartford. Ongoing. Yeah, in terms, your honor, of administering the actual plan. Yeah. Yeah, I think that's right. I think RAI administered the plan for all the underlying affiliates, one of which was Scarsdale. So, I mean, that's true. But again, under the language of the plan, I mean, it was the Hartford's plan and it doesn't say anything about, gee, the plan administrator is considered RAI. That necessarily means the employer, quote unquote, for purposes of benefit determination is the same. It doesn't say that at all. If the plan says RAI and affiliates are the employer, and RAI is the one of those two options that has an ongoing relationship with Hartford and administers the plan, why isn't it a reasonable deduction that that is the relevant employer for these purposes? Because in Mr. Bayer's case, he didn't receive any money from RAI proper. He didn't get paid anything. So Hartford's position is essentially completely inconsistent because if RAI proper was the employer, well, then his earnings were zero. None of the W2, none of the information Hartford got, whether it came from RAI's Ferrari or not, none of those showed RAI was the employer. It didn't pay Mr. Mayer anything. That wasn't his employer. How come RAI had the W2s but not the other information? Not the information about commissions and bonuses. And whatever they turned over to Hartford, they turned over the W2s and they had one bonus in there, but not the other bonuses. I think because RAI provided like a payroll service with respect to draws, it kind of, my understanding of the record is that RAI was almost like the over the top umbrella for the 50 affiliates who were all independent, but they used RAI as kind of a processing service almost for the payrolls, draws and everything else. But as Ferrari said in that citation, I just made your honor, Ferrari herself, RAI's Ferrari told Hartford, you have to ask Mayer for his earning stuff. We don't know anything about that. That's because they didn't pay him. As far as they'll pay him, that was his employer. Unless the court has any other questions. Is there other questions from my colleagues? I think that's time and the case is submitted. Thank you.